

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN, TEXAS 78711

JOHN L. HILL
ATTORNEY GENERAL

January 31, 1975

The Honorable C. C. Nolen
President
North Texas State University
Denton, Texas 76203

Opinion No. H- 513

Re: Questions as to validity
of state funded food cooperative,
and related questions.

Dear President Nolen:

You have requested our opinion concerning a proposed food cooperative at North Texas State University.

Specifically your questions are:

      1. Could a private food cooperative composed of students and faculty members of NTSU:

      (a) initially fund this cooperative by means of a grant or loan from the Student Service Fees Fund?

      (b) be housed in a university-owned structure?

      (c) purchase in bulk with the University Food Service?

      2. Could NTSU sponsor an entity which would sell grocery items and would the sale of such items be a proper auxiliary enterprise?

      (a) if so, could it be housed in a university owned building and could it purchase in bulk with the University Food Service?

It is our understanding that the Student Government Association of NTSU desires to establish and manage a food cooperative composed of NTSU students, staff and faculty members and funded through a grant or loan from the Student Service Fees Fund.

Student service fees may be used only for the support of student services (Education Code § 54.503(e) ) which are defined as "textbook rentals, recreational activities, . . . and any other student activities and services specifically authorized and approved by the appropriate governing board." Education Code § 54.503(a). The governing board may collect from students "the cost of student services which the board deems necessary or desirable in carrying out the educational functions of the institution." Education Code § 54.503(b). This section has been construed to allow expenditures for "services directly involving or being of benefit or interest to students." Letter Advisory No. 50 (1973). In addition, Letter Advisory No. 6 (1973) held the use of a private instrumentality for the implementation of such services to be permissible, stating:

> Prima facie, at least, the expenditures would be for a public purpose, established by the determination of the governing body that the service was necessary or desirable in carrying out the educational functions of the institution, though the question would ultimately be a judicial one. Expenditures for a true public purpose do not violate Article III, Section 51 of the Constitution (prohibiting grants of public money to corporations or individuals), even when a private agency is used to achieve the purpose . . .
>
> The governing board of an institution of higher education, in adopting rules and regulations for its operation, exercises delegated legislative powers, and in the absence of a clear showing that it has acted arbitrarily or has abused the authority vested in it, the courts will not interfere.

A food cooperative would, of course, be a service "directly involving or being of benefit to students." Letter Advisory No. 6 (1973). The question of whether it would be "necessary or desirable in carrying out the educational functions of the institution" (Education Code § 54. 503(b) ) is within the jurisdiction of the governing board to authorize and approve student services. Education Code § 54. 503 (a). There may exist valid educational goals involved in the administration of such a program. Furthermore, schools have traditionally furnished cafeteria service on the theory that proper nutrition is essential to a good learning atmosphere. We believe that reasoning applies as well to unprepared food sold by a cooperative as to prepared food served by a cafeteria, and we are therefore unable to decide as a matter of law that it would not be "necessary or desirable in carrying out the educational functions of the institution." Consequently, it is our opinion that a food cooperative may be funded by a grant or loan from the Student Service Fees Fund.

Once the governing board approves the program and thereby finds it to further a proper public purpose, the cooperative may be housed in a university building, the use of which is controlled by the board. The governing board of an institution of higher education exercises great discretion over the use of buildings. Splawn v. Woodward, 287 S.W.677 (Tex. Civ. App. , Austin 1926, no writ). While that case dealt with statutes concerning the University of Texas, similar authority is granted to the governing board of NTSU.

Section 95. 28 of the Education Code, made applicable to NTSU by section 105. 41, authorizes the board to "formulate rules for the general control and management of the school . . . ."

In a case dealing with NTSU, the court stated:

> [the] University has a legitimate interest in
> efficiently managing the use of its facilities
> for the benefit of the entire university com-
> munity. Duke v. N. T. S. U. , 338 F. Supp.
> 990, 998 (E. D. Tex. 1971).

As the court indicates, rent may be charged for the use of any facility.

However, the governing board of NTSU does not have full control over the use of educational and general buildings. Section 61.058(1) of the Education Code empowers the Coordinating Board to "determine formulas for space utilization in all educational and general buildings and facilities at institutions of higher education." Section 61.003(13) provides:

> 'Educational and general buildings and
> facilities' means buildings and facilities essential
> to or commonly associated with teaching, research,
> or the preservation of knowledge. Excluded are
> auxiliary enterprise buildings and facilities, includ-
> ing but not limited to dormitories, cafeterias,
> student union buildings, stadiums, and alumni
> centers.

It is therefore apparent that a cooperative may be housed in any auxiliary enterprise building or facility, since the governing board has complete control over such facilities. However, the approval of the Coordinating Board is necessary in order to house the cooperative in an educational or general building or facility.

The decision concerning whether the cooperative may purchase in bulk with the University Food Service would rest with the governing board pursuant to its general authority as provided in section 95.28. We have found no provision which limits the authority of the board in this matter.

You further ask whether the cooperative may be supported as an auxiliary enterprise of the university. In addition to the general definition of auxiliary enterprise set out above in section 61.003(13), the following definition is contained in College and University Business Administration, Chapter 13, page 128 (Revised Edition, 1968), which is published by the American Council on Education.

An auxiliary enterprise is an entity that
exists to furnish a service to students, faculty
or staff and that charges at a rate directly related
but not necessarily equal to the cost of the service.

Since a food cooperative would come within either definition, it is our
opinion that it would constitute a proper auxiliary enterprise. The above
discussion concerning housing and supply for a private cooperative would
be applicable to one operated as an auxiliary enterprise.

## SUMMARY

A food cooperative may be operated as a
student service of NTSU if it is properly approved
by the governing board as "necessary or desirable
in carrying out the educational functions of the
institution." It may also be operated as an auxiliary
enterprise.

The cooperative, with the approval of the govern-
ing board, may be housed in an auxiliary enterprise
facility or any other facility over which the board
has complete control. It may be housed in an
educational or general building or facility with the
approval of the Coordinating Board.

The cooperative, with the approval of the govern-
ing board, may purchase in bulk with the University
Food Service.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

DAVID M. KENDALL, First Assistant

C. ROBERT HEATH, Chairman
Opinion Committee

lg